## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 17-212 (BAH) |
| | ) | |
| ERVIN P. PETTAWAY, | ) | |
| | ) | |
| Defendant. | ) | |

### SENTENCING MEMORANDUM

Mr. Ervin Pettaway, through undersigned counsel, respectfully submits this memorandum requesting that the Court consider his state of mind at the time of the offense, his severe drug use and hospitalization, and the various legal arguments made in this sentencing memorandum in determining a fair and just sentence.

### BACKGROUND

On Friday, November 3, 2017, at approximately 9 a.m., which was about 2 and a half hours after being released from George Washington University Hospital, Mr. Pettaway walked about a mile to the safest place he could knew – the White House.  Still wearing his hospital bracelet, Mr. Pettaway told U.S. Secret Service officers that he had explosives on and in his body.  Thereafter, Mr. Pettaway was arrested and charged via criminal complaint with one count of Threatening and Conveying False Information Concerning the Use of an Explosive, in violation of 18 U.S.C. § 844(e).  *See* ECF # 1.  As stated in the complaint, Mr. Pettaway appeared to be experiencing "auditory hallucinations" at the time of his arrest.  *Id*. at pg. 3.  On Monday, November 6, 2017, Mr. Pettaway made his first appearance before Magistrate Judge G. Michael Harvey; and at that time, undersigned counsel requested a 24 hour competency screening, while the government requested a 30 day competency evaluation.  Magistrate Harvey granted the request for a 24 hour competency screening.

On November 7, 2017, Mr. Pettaway was indicted with the same conduct identified in the criminal complaint.  *See* ECF # 4.  The following day, November 8, 2017, a competency evaluation was performed and ultimately the evaluator opined that Mr. Pettaway was competent to stand trial.   On November 9, 2017, the parties again appeared before Magistrate Harvey at which time Mr. Pettaway was arraigned; he conceded his detention; and the government's request for a 30 day competency evaluation was denied.  *See* ECF # 7.

After litigating various constitutional aspects of the charged offense, the parties entered into a Rule 11(c)(1)(C) plea agreement which was provisionally accepted by this Court on April 17, 2018, pending review of the PreSentence Report.  *See* ECF #22.  As stated in the plea agreement, the parties agree that a sentencing range of 10 to 16 months incarceration, followed by a 3 year term of supervised release, is an appropriate sentence.  *Id*. at pg. 2.  Therefore, in accordance with the terms of the plea agreement, Mr. Pettaway hereby requests that this Court accept his plea agreement and impose a sentence of 10 months incarceration followed by three years of supervised release.

## ARGUMENT

Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.**  (Emphasis added).

With that limitation and considering all of the purposes of sentencing, this Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a).

When sentencing a defendant, the Court "may not presume that the Guidelines range is

reasonable." *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50.

Mr. Pettaway submits that after reviewing all of the applicable factors set forth in § 3553(a), a sentence at the low end of the range agreed to by the parties – 10 months - would be appropriate and consistent with the purposes of sentencing and that a sentence exceeding 10 months imprisonment would be greater than necessary to meet the sentencing purposes set forth in § 3553(a)(2).

## I.   Factors Under § 3553(a) Warrant Acceptance of the Plea Agreement

The four traditional goals of sentencing are just punishment, deterrence, incapacitation, and rehabilitation. *See Rita v. United States*, 551 U.S. 338, 348 (2007). When deciding what sentence best meets these goals, the court is to consider the guidelines and first calculate the appropriate offense level under the guidelines. However, the Supreme Court has stated that when a Guidelines sentence fails to properly reflect § 3553 considerations or the Guidelines reflect an "unsound judgment" then a below-guidelines sentence is appropriate. *See id.* at 351, 357. Here the applicable guideline range is 21 to 27 months. *See* PSR ¶ 98, pg. 22. In determining that guideline range, a four level increase is applied pursuant to substantial disruption of public, governmental, or business functions or services. *See* PSR ¶ 33, pg. 8.

Importantly, however, the proposed plea agreement pursuant to Rule 11(c)(1)(C) containing the guideline range of 10 to 16 months imprisonment, in essence, allows for a variance and/or departure from that four level increase pursuant to substantial disruption of

public, governmental, or business functions or services.  Therefore, if the four level enhancement did not apply, the total offense level would be 10 and the criminal history is III, resulting in a range of 10 to 16 months.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Pettaway

In 1984, Mr. Pettaway was born in Washington, D.C.  He is one of two children born to his parents; however, Mr. Pettaway was raised by his father because his mother has been addicted to crack prior to his birth.  See PSR ¶ 64, pg. 17-18.  Although his father had custody of Mr. Pettaway during his formative years, Mr. Pettaway struggled with his relationship with his father and at times was kicked out of the family home.  *Id*.  During his teenage years, Mr. Pettaway lived in a tent and associated with others who were living on the streets and homeless shelters.  *Id*.  Amazingly, despite this horrific childhood experience, he formed mentor relationships and was able to graduate from high school.  See PSR ¶ 69, pg. 18, and ¶ 81, pg. 20. Fortunately, with the structure of school, coupled with strong mentor relationships, Mr. Pettaway was able to stay out of trouble and away from drugs.  That all changed when high school ended in 2002.

For the past fifteen years, Mr. Pettaway has struggled in all aspects of his life – housing, employment, mental health, and most notably drug use.  Like many people who suffer from mental health issues, drugs and alcohol seem to go hand-in-hand.  Mr. Pettaway is desperate to receive drug treatment and mental health treatment.  As this Court knows, Mr. Pettaway has repeatedly requested placement and/or release into any drug treatment program available to him. *See* PSR ¶ 79, pg. 20.  Mr. Pettaway is also extremely aware that his addiction to drugs and his use of K2 and PCP led directly to his arrest and conviction in this case.  Mr. Pettaway is

motivated to get the help he so desperately needs, as he does not want to end up like a life-long addict like his mother.

**B.      The Need for the Sentence Imposed**

*I.      Seriousness of the Offense and the Need to Afford An Adequate Deterrent*

The U.S. Sentencing Commission has previously stated, "there is no correlation between recidivism and Guidelines' offense level" which is "not intended nor designed to predict recidivism."  *See U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 13 (2004).  Further, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence."  *Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").  Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University.  *See* Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/Sentence.pdf.  That study found correlation between sentence severity and crime rates were not sufficient to achieve statistical significance.

To date, Mr. Pettaway has served almost eight months at the D.C. Jail.  After his term of incarceration, he will begin serving a three year period of supervised release.  Further, as this Court is aware, Mr. Pettaway has been unable to participate in any drug treatment while

incarcerated despite his repeated requests as well as the efforts made by the parties.

Respectfully, the defense submits that drug treatment – not double the amount of time Mr. Pettaway has already served in this case - is what Mr. Pettaway desperately needs.  While the PSR writer has suggested participation in the Residential Drug Abuse Program (RDAP), even if Mr. Pettaway is sentenced to a term of 16 months incarceration, it is undersigned counsel's understanding that he would not be able to reap the benefit of participating in that program because of the length of time that would remain on his sentence once he is placed within the Bureau of Prisons.  *See* PSR ¶ 111 & 114, pg. 24.  Therefore, like Mr. Pettaway has previously requested of this Court, placement into the Residential Sanction Center (RSC) after completion of his incarceration may be a more appropriate first step in drug treatment.  RSC is a 28 day program that will also help facilitate a bridge between his incarceration at the D.C. Jail and his return to the community.  In addition, as the PSR writer notes, Mr. Pettaway is in need of vocational training, as his employment within the fields of construction and food services has been a bit sporadic.   *See* PSR ¶ 111 & 112, pg. 24.

In order to stop by the cycle of incarceration, Mr. Pettaway needs to remain drug free and obtain employment and/or vocational skills in order to be a productive member of society. Additional incarceration in this case will not further that goal.  Therefore, a 10 month term of incarceration followed by a three year term of supervised release can protect the public and achieve adequate deterrence.  On supervised release, Mr. Pettaway will be subject to a strict regimen of supervision.  This term of supervision will require regular reporting to a probation officer who will be able to assist him in reentering the community and ensuring that he receives the type of treatment he needs.  Further, Mr. Pettaway has previously demonstrated that when he is supervised by probation, he is able to abide by those conditions.  *See* PSR ¶ 45-46, pgs. 11-12.

### C.   A Sentence of 10 Months Incarceration is Not an Unwarranted Sentencing Disparity

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

Mr. Pettaway respectfully notes that a case involving the same charge that applies in this case before the former Chief Judge Richard W. Roberts, *United States v. Raymond A. Gray, Jr.*, Cr. No. 09-200 (RWR), is instructive on the issue of unwarranted disparity.  Judge Roberts imposed a sentence of 11 months incarceration, despite the calculated guideline range of 18 to 24 months and despite the plea agreement's inclusion of a 4 point increase for substantial disruption of public services where the conduct involved five separate instances of calling in bomb threats to metro stations and MARC.  While every case is different, as are the characteristics of each defendant, Mr. Gray's case was the most similar undersigned counsel could find to demonstrate that a sentence of 10 months incarceration for Mr. Pettaway is not an unwarranted sentencing disparity.

### CONCLUSION

A sentence of 10 months incarceration followed by a three year term of supervised release is a serious consequence that will more than adequately punish Mr. Pettaway for his

particular conduct and will also adequately deter any future wrongful conduct.  Thus, for the

reasons stated above, Mr. Pettaway's history and characteristics, together with the other goals of

sentencing, Mr. Pettaway respectfully requests that the Court impose a sentence of 10 months.


Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500